**In re: Application of HALLMARK CAPITAL CORPORATION.**

**Civil No. 07–MC–39 (JNE/SRN).**

United States District Court,
D. Minnesota.

June 1, 2007.

Order Denying Reconsideration
Sept. 13, 2007.

Douglas L. Elsass, Fruth, Jamison & Elsass, P.A., Minneapolis, MN, for Applicant.

Steve W. Gaskins & Kelly A. Moffitt, Flynn, Gaskins & Bennett LLP, Minneapolis, MN, for Michael Berman.

### ORDER

SUSAN RICHARD NELSON, United States Magistrate Judge.

This matter comes before the undersigned United States Magistrate Judge on the Application of Hallmark Capital Corporation for an Order, pursuant to 28

U.S.C. § 1782, permitting discovery for use in a foreign proceeding (Doc. No. 1). The matter has been referred to the undersigned pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). For the reasons stated below, the Court grants the application.

Applicant Hallmark Capital Corporation requests that this Court issue an ex parte Order pursuant to 28 U.S.C. § 1782 permitting discovery from Michael Berman for use in an Israeli arbitration proceeding. Hallmark is the claimant in the Israeli arbitration against UltraShape Inc. Mr. Berman, who serves as Chairman of the Board of UltraShape, is not a party to that proceeding, but appears to have information relevant to it.

Section 1782 authorizes a district court to order a person who resides or is found in the district "to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal.... The order may be made ... upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court." 28 U.S.C. § 1782.

The Eighth Circuit does not appear to have addressed the standard for evaluating requests under Section 1782. The Second Circuit has ruled that such an Order is appropriate where the Applicant establishes that (1) the discovery is sought from a person found in this district, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the applicant is an "interested person" before such foreign tribunal. *E.g. In re Schmitz*, 376 F.3d 79, 83 (2d Cir.2004).

■ Here, it appears that (1) Mr. Berman maintains his residence and principal place of business in Minnesota, (2) the discovery sought is for use in an Israeli arbitration, which qualifies as a "tribunal"

under Section 1782, *In re Roz Trading Ltd.*, 469 F.Supp.2d 1221, 1225–28 (N.D.Ga.2006) (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004)), and (3) the Applicant, Hallmark, is the claimant in the Israeli arbitration and thus an "interested person" under Section 1782, *In re Lancaster Factoring Co.*, 90 F.3d 38, 42 (2d Cir.1996).

■ Where such prerequisites are met, a court has the discretion to grant an application under Section 1782 if doing so would (1) provide an efficient means of assistance to participants in international litigation, and (2) encourage foreign countries to provide reciprocal means of assistance to United States courts and litigants. *In re Application of Euromepa*, 51 F.3d 1095, 1097, 1101 (2d Cir.1995). Here, after reviewing the Application and supporting materials, this Court finds that both aims would be met by permitting the requested discovery.

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY ORDERED that:

1. Applicant's request for an Order pursuant to 28 U.S.C. § 1782 (Doc. No. 1) is GRANTED.

2. Hallmark may take discovery from Michael Berman, a resident of Minnesota believed to be residing at 10727 Genevieve Lane, Minnetonka, MN, by serving him with a copy of this Order and the Request for the Production of Documents and the Request for Answers to Interrogatories as contained in Exhibit 1 to the Application.

3. Mr. Berman shall produce responsive documents in his possession, custody or control and shall answer the interrogatories no later than 30 days after service of this Order and Exhibit 1.

4. Subject to review by Applicant's counsel as to the sufficiency of the document production and the interrogatory answers, and upon provision of proper notice, the deposition of Mr. Berman shall take place within 30 days after Mr. Berman responds to the requested discovery.

### ORDER ON MOTION FOR RECONSIDERATION

This matter comes before the undersigned United States Magistrate Judge on the Motion of Michael Berman To Reconsider this Court's Order, pursuant to 28 U.S.C. § 1782, permitting discovery for use in a foreign proceeding (Doc. No. 8). The matter has been referred to the undersigned pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). For the reasons stated below, the Court denies the motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Applicant Hallmark Capital Corporation requested that this Court issue an ex parte Order pursuant to 28 U.S.C. § 1782 permitting discovery from Michael Berman for use in an Israeli arbitration proceeding. Hallmark is the claimant in the Israeli arbitration against UltraShape Inc. Mr. Berman, who serves as Chairman of the Board of UltraShape, is not a party to that proceeding, but appeared to have information relevant to it. After reviewing the Application and supporting materials, this Court found that the requested discovery was permissible and granted that request. (Doc. No. 3 (Order of June 1, 2007).)

On July 2, 2007, the Israeli arbitrator ruled that "[t]he existence of an order from a Federal Court in the district of Minnesota that requires ... Mr. Berman, to disclose documents to the movant and to answer questions regarding ... this arbitration constitutes a substantial reason to postpone the previous deadline set for the claimant to file its affidavits, in order for it to be able to include documents and/or information that will be discovered to it in the above-mentioned proceeding." (Doc. No. 16 (also noting his lack of authority "to order document discovery from one that is not a party to this arbitration").)

Mr. Berman then filed the present motion to reconsider, asking this Court to vacate its June 1 Order and deny Hallmark's application. Mr. Berman now contends that Section 1782 does not authorize judicial assistance for proceedings before private arbitration panels (at least not this particular arbitration proceeding) and that even if it did, the particular requests here are unduly broad and burdensome. (Mem. at 2–3.)

### II. DISCUSSION

**A. Section 1782 Authorizes Federal Judicial Assistance With Discovery For Use In A Proceeding In A Foreign Or International Tribunal**

As this Court previously noted, Section 1782 authorizes a district court to order a person who resides or is found in the district "to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international *tribunal*.... The order may be made ... upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court." 28 U.S.C. § 1782(a) (emphasis added).

The Eighth Circuit does not appear to have addressed the standard for evaluating requests under Section 1782. The Second Circuit has ruled that such an Order is appropriate where the Applicant establishes that (1) the discovery is sought from a person found in this district, (2) the

discovery is for use in a proceeding before a foreign tribunal, and (3) the applicant is an "interested person" before such foreign tribunal. *E.g. In re Schmitz*, 376 F.3d 79, 83 (2d Cir.2004). *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255–63, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004) (addressing and rejecting various proposed restrictions on scope of statute).

Here, it appears that (1) Mr. Berman maintains his residence and principal place of business in Minnesota, (2) the discovery sought is for use in an Israeli arbitration, and (3) the Applicant, Hallmark, is the claimant in the Israeli arbitration and thus an "interested person" under Section 1782, *In re Lancaster Factoring Co.*, 90 F.3d 38, 42 (2d Cir.1996).

Where such prerequisites are met, a court has the discretion to grant an application under Section 1782 if doing so would (1) provide an efficient means of assistance to participants in international litigation, and (2) encourage foreign countries to provide reciprocal means of assistance to United States courts and litigants. *In re Application of Euromepa*, 51 F.3d 1095, 1097, 1101 (2d Cir.1995). *Accord Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–66, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004) (noting factors for consideration in exercising court's discretion).

Mr. Berman now contends that the Israeli arbitration does not qualify as a "tribunal" under Section 1782. He also argues that even if the arbitration is such a tribunal, the Court should exercise its discretion to not permit the discovery because it is unduly broad and burdensome.

### B. A "Tribunal" Under Section 1782 Extends To Private Arbitration Bodies

The statute itself does not expressly define "tribunal" and the statutory context is indeterminate. Black's Law Dictionary defines "tribunal" as "[a] court or other adjudicatory body." *Black's Law Dictionary* 1512 (7th ed. 1999) (B. Garner, ed.). Thus, while "tribunal" presumably includes governmental adjudicatory bodies besides traditional "courts," it is not clear whether it also extends to private arbitral bodies. But as one court has concluded, "[h]ad Congress wanted to impose the limitation advanced by [the party opposing extension of Section 1782 to private arbitration bodies], it would have been a simple matter to add the word 'governmental' before the word 'tribunal' in the 1964 amendment." *In re Roz Trading Ltd.*, 469 F.Supp.2d 1221, 1226 n. 3 (N.D.Ga.2006). Moreover, "[b]oth the 'common usage' and 'widely accepted definition' of 'tribunal' include arbitral bodies." *Id.* at 1225.

In *Intel Corp. v. Advanced Micro Devices, Inc.*, the Supreme Court directly addressed several particular issues under Section 1782: (1) whether discovery is available to complainants "who do not have the status of private 'litigants' and are not sovereign agents," (2) whether "a 'proceeding' before a foreign 'tribunal' be 'pending' or at least 'imminent' for an applicant to invoke" Section 1782 successfully, and (3) whether Section 1782(a) "contains a foreign-discoverability requirement." 542 U.S. 241, 253, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004). Although the Court did not directly address whether "tribunal" would include an arbitral body, it stated in the course of recounting the evolution of the statute—which had applied only to "any judicial proceeding" but was amended in 1964 to extend to "a proceeding in a foreign or international tribunal"—that Congress understood that change to " 'provid[e] the possibility of U.S. judicial assistance in connection with [administrative and quasi-judicial proceedings abroad].' " *Id.* at 258, 124 S.Ct. 2466.

In support, the Court cited the applicable Senate Report and a law review article written by Professor Hans Smit, which provided—as the Court quoted—that " '[t]he term 'tribunal' ... includes ... administrative and arbitral tribunals.' " *Id.* (quoting Hans Smit, "International Litigation Under The United States Code," 65 *Colum. L. Rev.* 1015, 1026–27 & nn. 71, 73 (1965)). In support of this definition, Prof. Smit had cited the Senate Report on the 1964 legislation that remains substantively unchanged to the present. Smit, "International Litigation," *supra,* at 1026 n. 71. Prof. Smit also reiterated that "[t]he new legislation also authorizes assistance in aid of international arbitral tribunals." *Id.* at 1027 n. 73.

Because the Supreme Court had not granted certiorari on this precise question, Mr. Berman thus characterizes the Court's reference to arbitration tribunals as pure dicta. (Mem. at 7.) He relies instead on several decisions from the Second and Fifth Circuits that predate the Supreme Court's decision in *Intel Corp.* (Mem. at 5–6.) In *National Broadcasting Co., Inc. v. Bear Stearns & Co., Inc.,* the Second Circuit ruled that Section 1782 did not extend to arbitration panels, 165 F.3d 184, 191 (2d Cir.1999) ("*NBC* "), and in *Republic of Kazakhstan v. Biedermann Int'l,* the Fifth Circuit, guided substantially by the Second, followed suit, 168 F.3d 880, 883 (5th Cir.1999).

Although the Supreme Court did not squarely hold that foreign private arbitration bodies qualify as a "tribunal" under Section 1782 and did not expressly overrule or otherwise disapprove of the rulings in *NBC* and *Biedermann Int'l,* any lack of

a clear holding from the Supreme Court on this issue is of little moment because the Court's general approach to Section 1782, as well as that statute's legislative history, makes clear that the statute is best read not to impose any restrictive definitional exclusions that would necessarily preclude assistance to all private arbitral bodies.

In *Intel Corp.,* the Court ruled expansively with respect to each of the three issues on which it had granted review—that is, it held (1) that Section 1782 is available to those who are neither private 'litigants' or sovereign agents, (2) that a proceeding need not be pending or even imminent to invoke the statute, and (3) that Section 1782 does not impose any foreign discoverability requirement confining it to situations where the discovery sought in the United States is likewise permissible in the foreign country. 542 U.S. at 253–54, 124 S.Ct. 2466. This expansive approach suggests that the Court would not restrict the scope of "tribunal" to necessarily preclude assistance for use in private arbitrations.

In addition, the Court cited Prof. Smit's 1965 article no less than six times, all apparently with approval. 542 U.S. at 247–49, 256–59 & n. 1–3, 124 S.Ct. 2466.[1] This is not surprising in that Mr. Smit's 1965 article appears to be the definitive work on the evolution of Section 1782 that culminated in the 1964 amendments, which broadened the scope of the statute from "judicial proceedings" to "a proceeding in a foreign or international tribunal." *See* Smit, "International Litigation," *supra,* at 1015 n.* ("The author served as Reporter ... to the Commission and Advisory Com-

---

1. The Court also cited two additional articles by Prof. Smit on the general topic of discovery in international litigation—both published in the 1990s several decades after the 1964 amendments—multiple times and again with apparent approval. *Id.* at 261–65 & n. 12–14, 17, 124 S.Ct. 2466 (citing Hans Smit, "Recent Developments in International Litigation," 35 *S. Tex. L. Rev.* 215 (1994); Hans Smit, "American Assistance to Litigation in Foreign and International Tribunals," 25 *Syracuse J. Int'l L. & Comm.* 1 (1998)).

mittee on International Rules of Judicial Procedure.").

Moreover, the Court frequently cited Mr. Smit's article in conjunction with the legislative history he analyzed. That legislative history also supports the extension of Section 1782 to private arbitration proceedings.[2] In the wake of *Intel Corp.*, at least one federal district court has ruled that "tribunal" extends to private arbitration panels and expressly rejected the contrary pre-*Intel* rulings from the Second and Fifth Circuits. *In re Application of Roz Trading Ltd.*, 469 F.Supp.2d 1221, 1227–28 (N.D.Ga.2006).

Some of the objections to extending the reach of Section 1782 to private arbitrations are at least implicitly countered by the Court's ruling in *Intel*. For example, some courts have noted that extending the statute in such a fashion would create an inconsistency between the scope of discovery available in domestic arbitrations under the Federal Arbitration Act and the scope available in foreign arbitrations through recourse to a liberally-construed Section 1782. *Republic of Kazakhstan*, 168 F.3d 880, 882–83 (5th Cir.1999); *National Broadcasting Co., Inc. v. Bear Stearns & Co., Inc.*, 165 F.3d 184, 191 (2d Cir.1999).

But the Supreme Court was not bothered by any similar inconsistency with respect to foreign discoverability. 542 U.S. at 260–63, 124 S.Ct. 2466. The fact that the discovery requested in the United States might not be available in the foreign county at issue did not warrant a flat prohibition against providing the assis-

tance under Section 1782. In general, the Court "reject[ed] the categorical limitations Intel would place on the statute's reach." *Id.* at 255, 124 S.Ct. 2466.

Moreover, as the Supreme Court reiterated, the statute does not require a district court "to grant a § 1782(a) discovery application simply because it has the authority to do so." *Id.* at 264, 124 S.Ct. 2466 (and noting "factors that bear consideration in ruling on a 1782(a) request"). Thus, this Court believes that the better approach to this issue is to reject any inflexible rule that would categorically exclude all private arbitrations from the definition of "tribunal." Rather, a district court should consider whatever arguments might exist in a particular case against extending Section 1782 to arbitration bodies as part of its exercise of discretion in deciding whether to grant the application. *Cf. Intel*, 542 U.S. at 263 n. 15, 124 S.Ct. 2466 ("While we reject the rules the dissent would inject into the statute, we do suggest guides for the exercise of district-court discretion."); *id.* at 261, 124 S.Ct. 2466 ("While comity and parity concerns may be important as touchstones for a district court's exercise of discretion in particular cases, they do not permit our insertion of a generally applicable foreign-discoverability rule in to the text of § 1782(a)."); *id.* at 264, 124 S.Ct. 2466 ("[T]he grounds Intel urged for categorical limitations on § 1782(a)'s scope may be relevant in determining whether a discovery order should be granted in a particular case.").

Thus, any apparent "inconsistency" between discovery in domestic arbitrations

**2.** The Second Circuit and the Fifth Circuit ably argue that Prof. Smit's post-amendment writings should not be considered to determine what Congress intended when it amended the statute in 1964. *E.g. Republic of Kazakhstan*, 168 F.3d 880, 882 nn. 4 & 5 (5th Cir.1999); *National Broadcasting Co., Inc. v. Bear Stearns & Co., Inc.*, 165 F.3d 184, 190 & n. 6 (2d Cir.1999). But while such an analy-

sis might be appropriate in other contexts, this Court finds it unpersuasive where the post-amendment writings are by the Reporter for the responsible legislative committee and his understanding of the scope of the amendments is consistent with the general thrust of the Supreme Court's expansive interpretation of those amendments.

and that in foreign arbitrations does not compel the restrictive interpretation adhered to by the Second and Fifth Circuits. There is no absolute legal requirement—or even any sound reason—that domestic arbitration procedures be the same as those in the foreign or international context. *See Intel,* 542 U.S. at 261, 124 S.Ct. 2466 (" '[T]here is no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at its use.' "). Other countries are free to provide different procedures than those available in the United States and this Court fails to see any obligation on the federal district courts to negate any such disparities through a restrictive interpretation of Section 1782.

In fact, permitting the discovery as a matter of Section 1782 does not necessarily create any problem. Even if the district court would permit the discovery, nothing prohibits the arbitration body from nevertheless conditioning its acceptance of the evidence as it sees fit, or even refusing to allow the resulting evidence to be introduced or admitted. *Id.* at 262, 124 S.Ct. 2466 ("[T]he foreign tribunal can place conditions on its acceptance of the information to maintain whatever measure of parity it concludes is appropriate.").

Likewise, if the federal district court felt that one of the parties was abusing the privilege afforded by Section 1782 by, for example, seeking excessive or burdensome discovery that would undermine the otherwise streamlined procedures of arbitration compared to litigation, the court could exercise its discretion to deny the requested discovery. *Cf. Intel,* 542 U.S. at 262, 124 S.Ct. 2466 (noting that "[c]oncerns about maintaining parity among adversaries in litigation likewise do not provide a sound

basis for a cross-the-board foreign-discoverability rule," because district courts can condition relief to eliminate such problems).

In sum, this Court concludes that the assistance permissible under Section 1782 may extend to private arbitration bodies such as that at issue here. Moreover, under the circumstances of this case, the Court finds that it would be appropriate to permit the discovery requested here. Mr. Berman is not "a participant in the foreign proceeding" and the Israeli arbitrator has stated his "receptivity" to this Court's assistance. *See id.* at 264, 124 S.Ct. 2466 (discussing factors relevant to district court's exercise of discretion).

**C. The Discovery Sought By Applicant Is Not Unduly Broad Or Burdensome**

Mr. Berman also contends that if the discovery sought by Applicant is generally permissible, it is nevertheless overly broad and burdensome. The requested discovery consisted of nine document requests and nine interrogatories. Mr. Berman's objections seem focused on, if not entirely confined to, document request No. 6, which seeks "[a]ll documents concerning UltraShape that you received (directly or indirectly) through August 3, 2004." Although Mr. Berman claims it would be unduly burdensome for him to review all documents concerning UltraShape in light of the fact that he is its Chairman of the Board, he did not assume that position until December 2005 and thus the requested documents—defined as those through August 3, 2004—presumably could be readily separated from whatever documents he received later in his capacity as Chairman of the Board.[3]

---

**3.** With respect to the other requests, Mr. Berman seems to object on the basis that "the documents related to ISP which Hallmark seeks ... are located in ISP's home office in

Israel." (Doc. No. 13 (Decl. of Michael Berman) ¶ 6.) To the extent he suggests that *additional* copies are located in Israel, such

■ But as Applicant points out, Mr. Berman "does not take issue with Hallmark's assertion ... that the documents requested ... are predominantly e-mails that Berman received in Minnesota" and that they "are in his control by virtue of his being a partner of ISP." (Mem. at 6.) The fact that discovery is more limited under Israeli law than it is under U.S. law is of little significance here, where the Israeli arbitrator has expressly indicated his willingness to consider any evidence that results from the requested discovery. *See Intel*, 542 U.S. at 262, 124 S.Ct. 2466 ("When the foreign tribunal would readily accept relevant information discovered in the United States, application of a foreign-discoverability rule would be senseless.").

It appears that the requested documents regarding UltraShape would be largely if not entirely confined to the period from July 13, 2004, through August 3, 2004. Accordingly, it would not appear to be unduly burdensome to locate such documents, whether they be located on a computer or in hard copy. Such documents must be produced if they are in either the possession, custody, *or* control of Mr. Berman and the fact that copies might exist in Israel does not relieve him of his obligation to produce those over which he has such custody or control.

Finally, Mr. Berman is entitled to seek reimbursement for the reasonable time spent responding to these requests at a rate of $375.00 per hour. Mr. Berman asserts that he charges $3000 per day for consulting (Doc. No. 21), and Applicant does not contest this rate.

### III. ORDER

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY ORDERED that:

1. Mr. Berman's motion to reconsider this Court's Order of June 1, 2007 (Doc. No. 8) is DENIED.

2. Hallmark may take discovery from Michael Berman, a resident of this judicial district residing in Minnetonka, MN, by serving him with a copy of this Order and the Request for the Production of Documents and the Request for Answers to Interrogatories as contained in Exhibit 1 to the Application.

3. Mr. Berman shall produce all responsive documents in his possession, custody or control and shall answer the interrogatories no later than 30 days after service of this Order and Exhibit 1.

4. Subject to review by Applicant's counsel as to the sufficiency of the discovery responses, and upon provision of proper notice, the deposition of Mr. Berman shall take place within 30 days after Mr. Berman responds to the requests.

5. Applicant shall reimburse Mr. Berman at a rate of $375.00 per hour for time reasonably spent responding to these discovery requests, as documented in a sworn affidavit or declaration to be provided with the responsive documents.

---

copies would not relieve him of his obligation to produce copies in his possession or custody, and to the extent he suggests that the *only* copies are located in Israel, any such fact would not relieve him of his obligation to produce them if they are nonetheless in his control. This Court notes that he is a venture partner in ISP (*id.* ¶ 4), but that he claims he does "not have the authority to make anyone at ISP give me information or documents located on ISP computers and / or servers" (Doc. No. 21 (Second Decl. of Michael Berman) ¶ 5).